UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA PETERSEN, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HELIFLITE SHARES, LLC, KURT CARLSON, and FRANCESCO LAZZARINI, Jointly and Severally,<br><br>Defendants. | ECF CASE<br><br>No.: _____<br><br><u>INDIVIDUAL AND COLLECTIVE ACTION COMPLAINT</u><br><br>JURY TRIAL DEMANDED |

<u>NATURE OF THE ACTION</u>

1. Plaintiff Sandra Petersen has worked for Defendants HeliFlite Shares LLC ("HeliFlite"), its Chief Executive Officer Kurt Carlson ("Carlson"), and its Chief Operating Officer, Francesco "Frank" Lazzarini ("Lazzarini" and together with HeliFlite and Carlson, "Defendants") for nearly 8 years as a Scheduler & Dispatcher ("Dispatcher"), until her resignation effective June 4, 2019.

2. In this action, Petersen asserts claims of age (65) discrimination on her own behalf under ADEA of the Civil Rights Act of 1964, 42 U.S.C. §§ 2003e, *et seq.* ("ADEA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, *et seq.* ("LAD"), each as amended.

3. Ms. Petersen also alleges on behalf of herself that Defendants willfully violated the New Jersey Labor Law by (i) failing to pay overtime premium pay for hours worked in excess of 40 hours in a week, and (ii) failing to pay for all hours worked.

-1-

4. Ms. Petersen further alleges on behalf of herself and other similarly situated current and former employees of Defendants, pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), that Defendants willfully violated the FLSA by (i) failing to pay overtime premium pay for hours worked in excess of 40 hours in a week, and (ii) failing to pay for all hours worked.

## JURISDICTION AND VENUE

5. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3. Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2).

4. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5. Ms. Petersen was, at all relevant times, an adult individual who resides in Montclair, New Jersey. Petersen is age 65.

6. On information and belief, HeliFlite was and is a limited liability company founded in 1998, organized and existing under the laws of the State of New Jersey and/or authorized to conduct business in the State of New Jersey, with its principal place of business at 15 Brewster Road, Newark, NJ 07114.

7. Defendants provide Executive helicopter transportation services in the Northeast, Southern Florida and, more recently, Downtown Chicago. Defendants provide these services 24 hours a day, 365 days per year, as confirmed by the HeliFlite website and their marketing materials.

8. Defendant HeliFlite is, upon information and belief, an enterprise engaged in commerce or in the production of goods and/or services for commerce. Defendant HeliFlite is engaged in commerce or in the production of goods/services for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, helicopters, helicopter parts, helicopter fuel, interstate charter helicopter services, and airport services in various states.

9. Defendants Carlson and Lazzarini, upon information and belief, operate and control Defendant HeliFlite's day-to-day operations and management of Ms. Petersen and other similarly situated Dispatch employees at all relevant times.

10. Carlson and Lazzarini, either directly or indirectly, have hired and/or fired Ms. Petersen and other employees, controlled Plaintiff's and other employees' terms and conditions of employment, including their work schedules, their payment rate and method, and their promotions or lack thereof. Carlson and Lazzarini also kept at least some records regarding their employment and were responsible for enforcing HeliFlite's policies against, and obligation to 1) determine the proper classification of employees under federal and state wage and hour laws and to ensure that all employees who, like Plaintiff, are not exempt from overtime, timely receive overtime premium pay; and ii) investigate and take prompt remedial action to prevent unlawful gender or age-based discrimination and hostile work environment.

STATEMENT OF FACTS

11. HeliFlite provides helicopter services to business and leisure travelers, with helicopters based at Newark Liberty International Airport, serving the Northeast from Maryland to Maine. Some of the more common destinations for HeliFlite customers include Manhattan, Washington, DC, Philadelphia, Boston, Westchester County, Teterboro NJ, Atlantic City, Trump International Golf Course, The Hamptons, and the Mohegan Sun and Foxwoods Casinos.

12. As reflected in their marketing materials, HeliFlite Dispatchers work around the clock to accommodate clients' needs, including last minute bookings and scheduling changes. HeliFlite also advertises its 24-hour services at www.HeliFlite.com.

Duties Performed, Schedule and Compensation[1]

13. Defendants employed Ms. Petersen as a Dispatcher from on or about June 27, 2011 to on or about June 4, 2019. In this capacity, Petersen was responsible for assisting clients with requests for helicopter services via phone or email, as well as, assigning and/or updating available helicopters and crews, providing pricing, updating client trip sheets, and checking weather through METARS/TAFS .

14. However, neither Ms. Petersen, nor the other Dispatchers were permitted to exercise any discretion or judgment in performing her duties. Helicopter availability was determined by the Director of Maintenance, Director of Operations, and/or Frank Lazzarini, and pilot/crew availability was determined by the Chief Pilot, the Director Of Operations and/or Frank Lazzarini and subsequently entered into the Flight Operating System ("FOS") via the Crew Schedule. That information was then available to the

---

[1] These subject lines are included only for organizational purposes.

Dispatchers. In other words, Plaintiff's and the other Dispatcher's role in assigning helicopters and/or crew was essentially limited to taking a client request and entering it into the FOS. If, for example, a client ordered a helicopter for 8 people plus their baggage, the Dispatcher would choose the 8-seater Sikorsky S-76 from the list of in-service Helicopters, if available, or the 9-seater Agusta 139. She would then select a crew from the list/schedule based on the crew's availability to meet the flight time and destination, as well as the crew members certification to fly the Sikorsky S-76, or the Agusta 139 as the case may be.

15. If any substantive issues arose concerning the availability, operation or safety of the Helicopter itself, Dispatchers would simply call the Director of Maintenance and/or Frank Lazzarini any time, day or night, to make a decision. Dispatchers were not permitted to make such decisions.

16. Similarly, if any issues concerning the availability and/or fitness of the crew arose, the Chief Pilot, Director of Operations, and/or Frank Lazzarini had the final word. Again, neither Plaintiff nor the other Dispatchers were permitted to exercise discretion or otherwise make substantive decisions regarding the crew, other than to select them from a list of available crews, if any. If no crews were showing as available in FOS, the Dispatcher would simply call the Chief Pilot, Director or Operations and/or Frank Lazzarini.

17. By way of example, on or about October 14, 2017, Defendant Lazzarini actually became irate and berated Plaintiff for switching helicopters assigned to a client due to pending maintenance scheduling issues. Shortly thereafter, Lazzarini sent an email to all Dispatchers and the Director of Maintenance that read, in part: "Operational

Control" "I want each Dispatcher to answer this email and acknowledge that he/she does not have the authority to select which aircraft to assign to a trip. That decision is Kevin's [the Director of Maintenance] and no one else's." When Plaintiff didn't respond promptly, Lazzarini emailed her on or about October 16, 2017, writing: "Sandy, I haven't received your acknowledgment yet."

18. Similarly, if the client question concerned pricing, Ms. Petersen and/or the other Dispatchers simply looked up pre-approved pricing based on whether the client was a Fractional Owner, HeliCard Holder or Charter Client. Both Fractional and Helicard clients have pre-negotiated rates and terms established by Frank Lazzarini and/or Kurt Carlson that are made available to the Dispatchers in the computer system. Discounts for Charters were also pre-set by Lazzarini based on the seasonality, aircraft type and destination, and were available to Ms. Petersen and the other Dispatchers via email and posted on the Dispatch bulletin board. There was no discretion for the Dispatcher on who did or did not get a discount, or the size of that discount. If the client qualified for a discount, the predetermined discount was applied. If the client requested an additional discount for which it was not preapproved, Ms. Petersen and/or the other Dispatchers would typically call Defendant Lazzarini for approval, or the Manager of Dispatch.

19. Ms. Petersen was typically scheduled and worked 60 or more hours per week, on the following schedule:

> Friday 11am-9pm in the office; 9:00pm to 9:00am from home (21.5 hours);
>
> Saturday 12:30pm to 9pm in the office (8.5 hours); 9:00pm-9:00am from home (21.5 hours);

Sunday 12:30pm-9pm in the office; (8.5 hours);

Monday 11:00am to 9pm in the office (10 hours);

Tuesday -Thursday off

Neither Plaintiff, nor any other Dispatcher took a lunch break. Due to the non-stop client emails and phone calls, responses to which were closely monitored by management, they all typically ate lunch at their desks while continuing to work.

20. During the overnight shifts, Ms. Petersen remained responsible for fielding any and all client calls and emails, as well as being the first point of contact for any helicopter crew that had not yet returned to the HeliFlite hangar at Newark Airport. Due to the volume of trips at all hours of the day and night, Plaintiff was not so much "on call" as she was continuously working. As a result, she could not leave her computer or phone, and was required to stay at her home office during those scheduled hours. Of course, her authority, like that of the other Dispatchers, to make substantive decisions remained virtually non-existent, as her primary role was to call the Chief Pilot, Director of Maintenance, or Director of Operations[2] for anything beyond her normal scope of duties.

21. Based on Plaintiff's own time records for the year July 2017-July 2018, she worked over 900 hours of overtime for which she is entitled to more than $50,000 in overtime premium pay, plus interest, liquidated damages and attorneys' fees.

22. Defendants similarly failed to pay Plaintiff overtime in approximately equal amounts for each year of her employment.

---

[2] In approximately 2014, Frank Lazzarini was promoted from Director of Operations to Chief Operating Officer & Director of Operations. Julian Wheeler later became the Director of Operations in or about September 2016, at which time Lazzarini was Chief Operating Officer.

23. Plaintiff knows from her own observations, review of the schedules and conversations with other Dispatchers that the other Dispatchers, like her, worked 60 hours per week or more, performing the same duties with the same restrictions as Plaintiff, on schedules similar to Plaintiff's, but with different days worked and days off so that Defendants would always have 24 hours a day, seven days a week coverage. They too were not paid overtime premium pay for hours worked in excess of 40 in a week.

24. The shifts were so long and exhausting that Plaintiff and the other Dispatchers often complained that Defendants were putting their profits ahead of employee safety because they had employees driving to and from work in a state of utter exhaustion. One former Dispatcher actually suffered a near fatal car accident when she almost fell asleep at the wheel following her overnight shift. Notably, Defendants did not hire any additional Dispatchers or take any other steps to reduce the Dispatcher's hours. Even when the volume of HeliFlite's business increased substantially, and they more than doubled the size of their fleet from 6 helicopters to 13 helicopters, Defendants averaged 5 Dispatchers at any given time, with as many as 6 and as few as 4. They simply required everyone to work longer and harder. Again, with no overtime premium pay. Notably, repeated requests to hire an overnight Dispatcher were repeatedly denied, most recently in the Fall of 2018.

25. Throughout her employment, Plaintiff was paid on a salary basis and did not receive overtime premium pay for hours worked in excess of 40 in a week.

26. Defendants knew or willfully ignored their obligation to pay overtime premium pay to Plaintiff and other non-exempt Dispatchers. In fact, Defendants

temporarily had employees, including Dispatchers punching in and out. Starting in or around 2013 Defendants implemented a time recording system for about a year. They then brought the system back in or around December 2015. At that time, the Dispatchers were told by management that: "You don't need to punch in and out, we know who you are and when you are here."

27. Based on her own observations and conversations with other Dispatchers, Plaintiff knows that the other Dispatchers were similarly paid on a salary basis with no overtime premium pay for hours worked in excess of 40 per week, and similarly did not punch in or out, or otherwise maintain time records.

28. Depending on the time of year, all Dispatchers receive non-discretionary "on-call pay" of either $50 or $100 for working the overnights. Charter bonuses could also be earned if certain monthly booking targets were achieved. However, these bonuses do <u>not</u> represent over premium pay, but rather non-discretionary payments that should have been included in the regular rate of pay used to determine the correct overtime rate when paying overtime premium pay.

COLLECTIVE ACTION ALLEGATIONS

29. Under 29 U.S.C. § 206, Ms. Petersen seeks to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who were Dispatchers and other comparable salaried positions with different titles at any time since May 31, 2015 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA (the "Collective Action Members").

30. Ms. Petersen and the Collective Action Members are similarly situated on several legal and factual issues, including:

a. whether Defendants employed the Collective Action Members within the meaning of the FLSA;

b. whether the Collective Action Members performed similar duties;

c. whether Defendants failed to keep true and accurate time records for all hours Ms. Petersen and the Collective Action Members worked;

d. what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

e. whether Defendants willfully or recklessly violated the FLSA;

f. whether Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of forty (40) hours per workweek, violating the FLSA and the regulations promulgated thereunder;

g. whether Defendants misclassified the Collective Action Members as exempt from overtime;

h. whether Defendants should be enjoined from such violations of the FLSA in the future; and

i. whether the statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

AGE DISCRIMNATION: FAILURE TO PROMOTE & DENIAL OF TRAINING

31. Ms. Petersen had more than 10 years of relevant, industry experience in dispatching and client services in corporate and private aviation, prior to joining HeliFlite, bringing with her stellar letters of recommendation.

32. Other HeliFlite Dispatchers could not match her combination of training and experience.

33. Notwithstanding Ms. Petersen's resume, Defendants never even considered her for promotion to Assistant Manager of Dispatch in May 2018, with a substantial salary increase and bonus opportunity as compared to the Dispatcher position. Instead, Defendants selected Jackie Carillo (mid-30's) for the position, who is approximately 30 years younger than Plaintiff, with far less on the job experience.

34. Defendants age discrimination was readily apparent and not at all surprising to Petersen, as this was just the latest in a string of Assistant Manager of Dispatch promotions for which Defendants passed her over in favor of younger, less qualified candidates. In August 2014, Defendants promoted Brad Greiner (early 30's) to Manager of Dispatch with just 5 months of experience as a Dispatcher, skipping over the Assistant Manager position entirely. And, in June 2015, Defendants again discriminated against Petersen by promoting Kazi Islam (mid-30's) to Assistant Manager of Dispatch. In short, Defendants passed over Ms. Petersen for promotion on three separate occasions between 2014 and 2018, notwithstanding her superior credentials. Not once did Defendants post the Assistant Manager of Dispatch position, invite Plaintiff to apply for it, or interview her for consideration. Instead, they simply chose the younger, less qualified individual at every opportunity. The lack of promotion did not go unnoticed by others in the company who questioned why Plaintiff had not been promoted.

35. Further evidencing Plaintiff's strong record of experience in aviation and client service, HeliFlite managers commented that: i) Plaintiff "became a key component in implementing a cultural change to a team based work environment;" and ii) "I marvel at what you [Sandy] did at HeliFlite. You played a very important role in helping

HeliFlite to grow and prosper." Even Defendant Lazzarini noted, in or around 2014: "I wasn't sure about you in the beginning, but I'm a believer now!"

36. In the almost 8 years Plaintiff has been with HeliFlite, 12 out of 18 Dispatchers either quit or were fired. For her part, Plaintiff has been the longest tenured and oldest Dispatcher; a great employee with high performance ratings who, since 2014, was forced to take on additional job responsibility for weekend and holiday invoicing (something no other dispatcher does) yet she has never even been considered for a promotion. While others, younger and less qualified, have received multiple promotions.

37. Through the denial of promotions, Defendants have also discriminated against Plaintiff in her compensation, inasmuch as those promotions at HeliFlite came with substantial pay increases and End of Summer Bonuses.

38. Defendants' animus toward older worker was further exemplified by their refusal to allow Ms. Petersen to attend the Annual Schedulers & Dispatchers Conference (the "Conference").

39. Each year since 2013 Petersen requested of Defendants to attend the Conference and each time her request was denied. However, when Birgit Rose (early 30's), who had only been with HeliFlite about 6 months asked to attend in 2015, Defendant Kurt Carlson approved. She then quit approximately 3 months later. When Ms. Petersen complained to Defendant Carlson that it was unfair for Defendants to send the younger, less experienced, newer hire to the Conference instead of her, Lazzarini let it be known to Plaintiff and her Manager, Brad Griener, that "it was inappropriate for her to contact Kurt" concerning that issue. Ironically, when Brigit Rose (early 30's) walked into Kurt's office and made a similar request, it wasn't "inappropriate", it was approved.

40. In or around December 2014, Brad Griener expressly acknowledged Plaintiff's frustration and disappointment in being left out of the Conference again, but he never subsequently invited her.

41. Further evidence of age discrimination exists in Defendants' exclusion of Plaintiff from RAZOR/UBER training for HeliFlite's new venture with UBER to provide Helicopter services between Wallstreet Heliport and JFK Airport. Defendants trained 3 of their 4 Dispatchers—all but Plaintiff—ensuring that they were well versed in this new operation in advance of its May 2019 launch by having them work at the heliport 3-4 days per week doing trial runs during April. Each of the Dispatchers who received RAZOR/UBER Training were considerably younger than Plaintiff, two of whom are under the age of 40.

42. Moreover, Plaintiff requested additional training in FOS and Flight Explorer software from two different managers; namely, Brad Griener and Kazi Islam. Both managers acknowledged that such training was a good idea, but neither of them provided it.

### FIRST CAUSE OF ACTION
### FAILURE TO PAY EARNED OVERTIME WAGES
### UNDER THE NEW JERSEY WAGE & HOUR LAW
(On Behalf of Ms. Petersen)

43. Ms. Petersen, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

44. Defendants are "employers" within the meaning of New Jersey Wage & Hour Laws and supporting New Jersey Regulations and employed Ms. Petersen.

45. Defendants misclassified Ms. Petersen as exempt from overtime.

46. Defendants failed to keep records of the hours worked by Ms. Petersen.

47. Defendants were required to pay Ms. Petersen all earned wages, including overtime premium pay for hours worked in excess of 40 in a week.

48. Upon information and belief, Defendants failed to furnish Ms. Petersen a statement with every wage payment listing the correct hours worked, rates paid, allowances taken, and/or gross wages.

49. Defendants have willfully violated the New Jersey Wage & Hour Law by knowingly and intentionally failing to pay for all earned wages, including overtime premium wages.

50. Ms. Petersen is entitled to recover from Defendants her unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

SECOND CAUSE OF ACTION
FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE FLSA
(On Behalf of Ms. Petersen and the Collective Action Members)

51. Ms. Petersen repeats and realleges every allegation of the preceding paragraphs as if set forth fully herein.

52. Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

53. Defendants were required to pay Ms. Petersen and the Collective Action Members no less than one and one-half (1.5) times the regular rate at which they were employed for all hours worked in excess of forty (40) hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

54. At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to their employees for their hours worked in excess of forty (40) hours per workweek.

55. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

56. Defendants have not made a good faith effort to comply with the FLSA with respect to Ms. Petersen and the Collective Action Members' compensation.

57. Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

58. Ms. Petersen and the Collective Action Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

59. Ms. Petersen, on behalf of herself and the Collective Action Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein

THIRD CAUSE OF ACTION
AGE DISCRIMINATION UNDER THE ADEA
(On Behalf of Ms. Petersen)

60. Ms. Petersen repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

61. At all relevant times, Ms. Petersen was an "employee" and "person" within the meaning of the ADEA and Defendants were "employers."

62. The ADEA prohibits, age discrimination, as well as the creation of a hostile work environment, including age-based harassment. 29 U.S.C. §§ 621, *et seq*. As Lazzarini was Plaintiff's supervisor, HeliFlite is vicariously liable for her age discrimination and Defendants are unable to support an affirmative defense to this.

63. The facts asserted in this Complaint confirm that Defendants engaged in intentional discrimination, acting with malice or reckless disregard for Plaintiff's civil rights.

64. Petersen made numerous complaints to Management regarding the hostile work environment. Defendants failed to investigate or otherwise take corrective action.

65. Defendants engaged in unlawful employment practices that violate the ADEA by discriminating against Ms. Petersen because of her age.

66. As a result of Defendants' unlawful conduct, Ms. Petersen has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life, medical expenses, punitive damages, and attorneys' fees.

FOURTH CAUSE OF ACTION
AGE DISCRIMINATION UNDER THE N. J. LAW AGAINST DISCRIMINATION
(On Behalf of Ms. Petersen)

67. Ms. Petersen repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

68. At all relevant times, Petersen was an "employee" and "person" within the meaning of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, *et seq*. (the "LAD") and Defendants were "employers."

69. The LAD prohibits employment discrimination and harassment based, *inter alia*, on age.

70. Defendants passed over Plaintiff for promotions, training and other perquisites of her job because of her age in favor of younger, less qualified candidates.

71. HeliFlite is vicariously liable for an actionable hostile environment created by, and discrimination by one of its supervisors who had immediate or successively higher authority over Petersen.

72. Carlson and Lazzarini had the authority to affect Petersen's employment terms and conditions.

73. Carlson and Lazzarini are personally liable for the damages under this claim because they constitute an employer and participated in the conduct giving rise to this claim.

74. As a result of Defendants' unlawful conduct, Ms. Petersen has suffered and continues to suffer, *inter alia*, loss of wages, emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life, medical expenses and attorneys' fees.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Ms. Petersen, on behalf of herself, and the Collective Action Members where applicable, respectfully requests this Court grant the following relief:

a. Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing

individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Ms. Petersen and her counsel to represent the Collective Action Members and tolling of the statute of limitations;

  b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

  c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

  d. An award for unpaid earned wages under the NJ Wage & Hour Law and the FLSA;

  e. An award for unpaid earned overtime wages under the NJ Wage & Hour Law and the FLSA;

  f. An award of liquidated damages as a result of Defendants' NJ Wage & Hour Law violations;

  g. An award of liquidated damages as a result of Defendants' willful FLSA violations;

  i. An award of compensatory and punitive damages for Defendants' unlawful conduct under the ADEA;

  j. Equitably tolling the statute of limitations under the FLSA;

  k. An award of pre-judgment and post-judgment interest;

l. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m. An award for Ms. Petersen for age-based discrimination under ADEA and New Jersey LAD, including, back pay, front pay emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses, punitive damages, attorney's fees and costs and interest.

n. An award for Ms. Petersen for unlawful retaliation under the FLSA and NJ Wage Hour Law including, back pay, front pay emotional distress, mental anguish, emotional pain, physical pain and suffering, inconvenience, loss of enjoyment of life and medical expenses, liquidated and/or punitive damages, attorney's fees and costs and interest.

o. Such other and further relief as this Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Ms. Petersen demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
July 8, 2019

LIPSKY LOWE LLP

s/ Christopher H. Lowe
Christopher H. Lowe
Sara Isaacson
630 Third Avenue, Fifth Floor
New York, New York 10017-6705
Tel: 212.392.4772
Fax: 212.444.1030
chris@lipskylowe.com
sara@lipskylowe.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA PETERSEN, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HELIFLITE SHARES, LLC, KURT CARLSON, and FRANCESCO LAZZARINI, Jointly and Severally,<br><br>Defendants. | ECF CASE<br><br>No.: _____<br><br>Consent to Join Collective Action |

I, Sandra Petersen, consent to be the named-plaintiff / party-plaintiff in the above-captioned lawsuit against Defendants HeliFlite Shares, LLC, Kurt Carlson and Francesco Lazzarini in order to seek redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and analogous state laws.

By signing and returning this Consent Form, I herby designate Lipsky Lowe LLP to represent me in this lawsuit and to make decisions on my behalf concerning this lawsuit and any settlement thereof, including the method and manner of conducting this lawsuit, the entering into an agreement with Lipsky Lowe LLP concerning attorney's fees and costs, as well as all other matters pertaining to this lawsuit. I further agree to be bound by any adjudication of by the Court, whether favorable or unfavorable.

_____    7/3/19
Signature                                            Date

SANDRA J Petersen
Print Name